No. 22815.

The Board of County Commissioners of Boulder County v. William E. Buck, District Judge; Gerald A. Caplan; The District Court of Boulder County; Joseph Dyre Morse; Rupert M. Ryan; and Rex H. Scott.

(452 P.2d 6)

Decided March 24, 1969.

William L. Paddock, for plaintiff in error.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Paul D. Rubner, Assistant, Gerald A. Caplan, Rupert M. Ryan, for defendants in error.

500

*En Banc.*

Mr. Chief Justice McWilliams delivered the opinion of the Court.

This writ of error is directed to a judgment of contempt and is a companion case to *Morse v. People,* 168 Colo. 494, 452 P.2d 3, announced contemporaneously with this opinion. In *Morse v. People, supra,* Morse's conviction for the crime of murder in the first degree was affirmed.

On August 8, 1966 one Rupert M. Ryan and Gerald A. Caplan were appointed by the Honorable William E. Buck (who will hereinafter be referred to as the trial court) to represent Morse in the aforementioned criminal proceeding wherein Morse was accused of the crime of murder in the first degree. Trial by jury commenced on November 28, 1966 and ended on December 3, 1966 when the jury returned a verdict finding Morse guilty of first degree murder.

On December 5, 1966 Ryan and Caplan filed a motion for new trial, which motion was denied on December 6, 1966. On this latter date, Morse, after stating that he had "no bitterness or hard feeling to anyone and was ready for sentence," was duly sentenced by the trial court to the state penitentiary for the rest of his natural life.

On December 12, 1966 a hearing was held before the trial court for the purpose of setting the attorney's fee to be allowed Ryan and Caplan. The record before us does not contain a transcript of that which transpired at this particular hearing, though it is evident that before setting the fees the trial court listened to statements from Ryan, Mr. Stanley A. Black, President of the Boulder County Bar Association, and Mr. Harl G. Douglas. At the conclusion of this hearing the trial court entered an order that Ryan be allowed a fee in the sum of $4,750 and Caplan a fee of $3,010. Additionally, Ryan and Caplan

were allowed the sum of $106.83 to reimburse them for expenses incurred by them.

Reading between the lines, we surmise that the Board of County Commissioners of Boulder County (hereinafter referred to as the Board) balked at issuing the warrant to be drawn on the County Treasurer as payment of such fees. In any event, on January 18, 1967 the trial court no doubt upon request signed a formal written order wherein it first recited verbatim its earlier order of August 8, 1966 appointing Ryan and Caplan to represent Morse and its subsequent order of December 12, 1966 wherein it set the attorneys' fees to be allowed Ryan and Caplan; and then the trial court *ordered* the Board to comply with the provisions of C.R.S. 1963, 39-7-28 and "forthwith pay the fees to the attorneys as set forth in the order . . . and in the amount as endorsed thereon by the Court."

On January 25, 1967 the Board filed a Motion for Re-Hearing or Reconsideration, alleging therein that the Board had not been a party to the proceeding wherein the attorneys' fees granted Ryan and Caplan had been set, that the Board had no notice of such hearing, and suggested that the fees thus allowed might be "excessive, arbitrary and capricious." In this motion the Board also indicated that in its view, at least, C.R.S. 1963, 36-2-9 granted the Board the power to "disallow" the aforementioned order.

This motion then came on for hearing on January 30, 1967 and — after brief argument from counsel — the motion was denied. At the conclusion of this hearing counsel for the Board certainly indicated that the Board would comply with the order of court, commenting that "ordinarily we pay our warrants on Thursday . . . . Will you not cite us for contempt till then?" Counsel then repeated his statement and again indicated that a warrant would be drawn on the Thursday following the hearing, which would have been February 2, 1967. However, to this statement of intention by counsel, the trial court

responded by declaring that "it will be at your convenience." By that statement we can only take it to mean that the order of the trial court was that the Board draw up the warrants in question at its convenience, and not necessarily on the following Thursday, namely, February 2, 1967. At least, according to the record before us, that is what the trial court said.

Again reading between the lines, the Board apparently did not completely process the warrants on February 2, 1967. In any event, on February 3, 1967 the trial court issued an order citing the Board for contempt. In this contempt citation it was pointed out by the trial court that at the prior hearing counsel had indicated that the warrants would be processed on February 2, 1967 but that the warrants apparently had not been processed on February 2, 1967, the trial court observing in this connection that in a local Boulder press release dated February 2, 1967 it was reported that "they [presumably referring to the Board] do not find it convenient today to pay." The Board was then ordered to appear in court and show cause why it should not be punished for failure to comply with the prior order of court and for its "public defiance" of the court through the press release of February 2, 1967.

Hearing on the aforesaid contempt citation was thereafter held on February 6, 1967. At this time counsel called to the attention of the trial court that the hearing on January 30, 1967 concluded with the statement of the court that the warrants should be drawn and processed "at the convenience" of the Board. Counsel also indicated that actually the warrants had been drawn on February 2, 1967, but apparently were held up momentarily while the Board was attempting to determine what to do next in attempting to get a judicial review of the order setting the aforesaid attorneys' fees. The warrants, however, were tendered on February 6, 1967 to the trial court, which declined the tender and ordered that they be given Ryan and Caplan. Apparently, they were thereafter de-

livered to Ryan and Caplan, and upon oral argument it was agreed that Ryan and Caplan had long since received the fees previously allowed them by the trial court.

The contempt hearing then concluded with a determination by the trial court that the Board was in contempt of court and the trial court assessed a fine of one dollar against each individual commissioner. By this writ of error the Board seeks reversal of the judgment of contempt thus entered against it.

In its brief the Board again points out that the final words of the trial court at the conclusion of the hearing held on January 30, 1967 were that the warrants here in question could be drawn at the convenience of the Board. Such then being the order of the court, it is suggested that it is a bit difficult to see just how the Board could be held in contempt for failing to process the warrants on or before February 2, 1967, which was only three days after the trial court had expressly authorized the processing of these related warrants at the convenience of the Board. Alternatively, it is argued that the order of the trial court was, for a variety of reasons, a void order, and accordingly the Board could not be adjudged to be in contempt for failing to comply with a void order.

■ Our analysis of the situation is that the judgment of contempt must be reversed for the very simple and fundamental reason that based on the record before us there is nothing to indicate that the Board refused or failed to comply with any order of the trial court. It should be emphasized that the trial court did *not* order the Board to process the warrants here in question by February 2, 1967, but on the contrary stated that such could be done at the convenience of the Board. This being the state of the record, a contempt judgment can not thereafter be predicated upon the fact that the Board did not process the warrants on or before February 2, 1967.

Nor do we perceive any act of "public defiance" on the part of the Board in connection with the newspaper article above referred to and mentioned by the trial court

in its order of February 3, 1967. The newspaper article, incidentally, is not a part of the record. But assuming for the sake of argument that the statement is properly attributable to the Board, it is again a bit difficult to fathom how the Board can be held in contempt for merely paraphrasing the very language uttered by the trial court, namely that the warrants could be drawn at the convenience of the Board.

Having resolved this controversy on the basis that the record before us fails to disclose that the Board disobeyed any order of court and the warrants having now been drawn and paid by the County Treasurer, we deem it unnecessary to here determine the Board's additional contention that the order was a void order.

The judgment of contempt directed against each of the Board of County Commissioners is reversed and the cause remanded with the direction that the contempt citations be dismissed.