COLORADO COURT OF APPEALS                                    **2016COA129**

---

Court of Appeals No. 15CA1177
City and County of Denver District Court No. 14CR3123
Honorable Elizabeth A. Starrs, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Donald Ray Shores,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE BERGER
Román and Bernard, JJ., concur

Announced September 8, 2016

---

Cynthia H. Coffman, Attorney General, Melissa D. Allen, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Danyel S. Joffe, Alternate Defense Counsel, Denver, Colorado, for Defendant-
Appellant

¶ 1     Defendant, Donald Ray Shores, appeals the judgment of conviction entered on a jury verdict finding him guilty of first degree sexual assault.  He argues that the trial court erred in (1) determining that the statute of limitations had not expired before the prosecution filed charges and (2) admitting CRE 404(b) evidence of a sexual assault allegedly committed by Shores against another victim.  We address and reject these arguments and affirm.

## I.  Facts and Procedural History

¶ 2     In the early morning of September 6, 1994, the police responded to an assault call regarding an elderly woman — the victim — who had been found badly beaten in a Denver park.  A police officer who responded to the call testified that the victim's blouse was torn and she had substantial injuries to her face.

¶ 3     While the victim was receiving treatment at the hospital, a nurse noticed evidence of injury to her vaginal area.  The gynecologist who subsequently examined the victim testified that there were abnormal abrasions and bleeding in her vaginal area and inside her vagina.  The gynecologist opined that a normal woman the victim's age — she was sixty-seven at the time of the assault — could not have received those injuries without experiencing severe

pain during intercourse. Because of the nature and significance of the victim's injuries, the gynecologist concluded that they were consistent with an act of forced sexual intercourse.

¶ 4 A psychiatrist who also examined the victim at the hospital testified that the victim was very disorganized and confused, and she opined that the victim was not able to care for herself. The psychiatrist testified that had it been determined that the victim needed surgery because of her facial fractures, the hospital would have needed to petition the court for a guardian because the victim was not mentally competent to consent to surgery. (Ultimately, it was determined that the victim did not need surgery.)

¶ 5 At the time of the assault, the victim lived at an assisted living facility. A caretaker at the facility testified that it was difficult to speak with the victim because she was shy, not very talkative, and her speech was difficult to understand. No statement by the victim that she was sexually assaulted, or denying that she was sexually assaulted, was admitted at trial, and the victim never identified Shores as her attacker. Although DNA was extracted from sperm found in the victim's vagina during a sexual assault examination, no suspect was initially identified from the DNA evidence.

¶ 6     The victim died in 2000 from cancer.  In 2010, the DNA evidence from the victim's case was matched to Shores' DNA, but the district attorney's office chose not to file charges against Shores at that time.

¶ 7     Several years later, the Denver Police Department learned that Shores had been tied, through DNA, to a 2013 sexual assault of a woman in Texas.  This information led to the filing of charges in this case in 2014.  Shores was charged with first degree sexual assault under the statute effective in 1994[1] and a crime of violence sentence enhancer.

¶ 8     Shores did not testify at trial but his counsel argued that Shores had consensual intercourse with the victim, soon after which she was sexually assaulted by someone else in an unrelated incident.  The jury rejected this argument and convicted Shores as charged.  The trial court sentenced Shores to twenty-five years' imprisonment.

---

[1] *See* Ch. 151, sec. 2, § 18-3-402(3)(b), 1985 Colo. Sess. Laws 666; Ch. 199, sec. 1, § 18-3-402(1), 1983 Colo. Sess. Laws 698; Ch. 171, sec. 1, § 18-3-402(1)(a), 1975 Colo. Sess. Laws 628.

## II. Statute of Limitations

¶ 9      Shores argues that the trial court erred in denying his motion to dismiss for failure to file charges within the statute of limitations. Specifically, he contends that section 16-5-401(8)(a.5), C.R.S. 2015, which eliminates the statute of limitations in first degree sexual assault cases if certain circumstances exist, does not apply in this case. Therefore, according to Shores, the ten-year statute of limitations in effect in September 1994 applies instead. *See* Ch. 292, sec 4, § 16-5-401(8)(a), 1993 Colo. Sess. Laws 1727.

¶ 10      Because the ten-year limitation period had expired prior to June 2014 when the charges were filed, Shores argues that the charges were filed after the statute of limitations had run, barring his prosecution. We reject this argument because we conclude that the court correctly applied section 16-5-401(8)(a.5).

¶ 11      Whether a specific provision of a statute of limitations applies to an offense is a question of law that we review de novo. *See People v. McKinney*, 99 P.3d 1038, 1041 (Colo. 2004).

¶ 12      In 2001, the General Assembly "carved out an exception" to the ten-year statute of limitations that applied to certain sexual assault offenses by enacting section 16-5-401(8)(a.5). *People v.*

4

*Hicks*, 262 P.3d 916, 918 (Colo. App. 2011). The exception applies to offenses committed after July 1, 1991, including first degree sexual assault under section 18-3-402, C.R.S. 2015, as it existed prior to July 1, 2000. Ch. 283, secs. 1, 4, § 16-5-401(8)(a.5)(I), 2001 Colo. Sess. Laws 1057-59.

¶ 13 Section 16-5-401(8)(a.5) provides that there is "no limit on the period of time during which a person may be prosecuted after the commission of [an] offense" if "the identity of the defendant . . . is determined, in whole or in part, by patterned chemical structure of genetic information, and . . . the offense has been reported to a law enforcement agency . . . within ten years after [its] commission."[2]

¶ 14 Accordingly, there is no time limit for prosecuting certain sexual assaults committed after July 1, 1991, if (1) the defendant's identity is determined in whole or in part by DNA and (2) the offense is reported to a law enforcement agency within ten years after its commission. *Hicks*, 262 P.3d at 918.

¶ 15 Shores concedes that his identity was determined in whole or in part by DNA, but he argues that the terms of section

---

[2] DNA is a "patterned chemical structure of genetic information" within the meaning of section 16-5-401(8)(a.5), C.R.S. 2015. *See People v. Hicks*, 262 P.3d 916, 918 (Colo. App. 2011).

16-5-401(8)(a.5) are not met because the victim never reported the crime to law enforcement. The trial court rejected this argument, concluding that the statute does not require that the victim be the person who reported the offense, only that the offense has been reported. We agree with the court's interpretation.

¶ 16    In interpreting a statute, "our primary purpose is to ascertain and give effect to the intent of the General Assembly." *People v. Johnson*, 2013 COA 122, ¶ 7. "To discern the legislative intent, we first look at the language of the statute and give statutory words and phrases their plain and ordinary meaning." *People v. Davis*, 218 P.3d 718, 723 (Colo. App. 2008). If the statutory language is unambiguous, we apply the words as written without resort to other rules of statutory interpretation. *People v. Van De Weghe*, 2012 COA 204, ¶ 8. "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* (citation omitted).

¶ 17    The language of the relevant portion of section 16-5-401(8)(a.5) — that "the offense has been reported to a law enforcement agency" — contains no requirement that *the victim* be the person who

reported the offense to the police. "[A] court should not read into a statute an exception, limitation, or qualifier that its plain language does not suggest, warrant, or mandate." *People v. Sorrendino*, 37 P.3d 501, 504 (Colo. App. 2001). Because the statute makes no reference to the manner in which the offense must be reported, or by whom, we will not presume that the General Assembly intended its application to be limited to cases in which the victim reported the offense.

¶ 18    Several other states that have exceptions to their statutes of limitations for certain sexual offenses in which the defendant is identified by DNA do require that the victim be the person who reported the offense. *See* Conn. Gen. Stat. § 54-193b (2015); 720 Ill. Comp. Stat. 5/3-5 (2015); Okla. Stat. Ann. tit. 22, § 152(C) (2015). However, they do so by using explicit language to this effect, providing that there is no time limit for prosecuting certain sexual assaults if the defendant's identity is obtained through DNA and:

- "*the victim* notified any police officer . . . not later than five years after the commission of the offense," Conn. Gen. Stat. § 54-193b (emphasis added);

7

- "*the victim* reported the offense to law enforcement authorities within three years after the commission of the offense," 720 Ill. Comp. Stat. 5/3-5(a) (emphasis added); or

- "*the victim* notified law enforcement within twelve (12) years after the discovery of the crime," Okla. Stat. Ann. tit. 22, § 152(C)(2).

¶ 19 Thus, because the General Assembly could have restricted the application of section 16-5-401(8)(a.5) to cases in which the victim reported the offense but did not do so, "we do not read [such an] additional restriction[] into the statute." *Springer v. City & Cty. of Denver*, 13 P.3d 794, 804 (Colo. 2000). Rather, under the plain language of the statute, it applies in all cases in which a law enforcement agency has in some way received a report of the offense (and the other statutory terms are met). This condition indisputably was met here.

¶ 20 The police had known about the physical assault on the victim from their response to the initial call, and they received further information from the hospital about her condition, including the results of the sexual assault examination kit. The sexual assault

8

therefore "ha[d] been reported to a law enforcement agency . . . within ten years after [its] commission." § 16-5-401(8)(a.5).

¶ 21    Accordingly, there was no statutory time limit in which to file charges against Shores, and the trial court correctly denied his motion to dismiss.

## III.  CRE 404(b) Evidence

¶ 22    Shores argues that the trial court abused its discretion in admitting CRE 404(b) evidence of the 2013 sexual assault in Texas. We disagree.

¶ 23    We review a trial court's decision to admit other acts evidence under CRE 404(b) for an abuse of discretion.  *People v. Cisneros*, 2014 COA 49, ¶ 103.  A trial court has "substantial discretion when deciding whether to admit evidence of other acts," and its ruling will not be disturbed absent an abuse of that discretion.  *Yusem v. People*, 210 P.3d 458, 463 (Colo. 2009).  A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it misconstrues or misapplies the law.  *People v. Williams*, 2016 COA 48, ¶ 18.

## A. Facts

¶ 24 The prosecution moved pretrial to admit under CRE 404(b) and section 16-10-301, C.R.S. 2015, evidence relating to "[Shores'] aggravated sexual assault of [D.B.], a 49-year-old disabled woman under the care of a home health provider in . . . Texas." The prosecution sought to admit the evidence "[t]o refute the defense of consent"; "[t]o show a common plan, scheme, or design"; and "[t]o show the absence of mistake or accident." In a thorough, written order, the trial court granted the motion over defense counsel's objection and admitted the evidence for the purposes described by the prosecution.

¶ 25 Before D.B. testified at trial, the court instructed the jury that it could consider her testimony only for the above purposes and "for no other purpose."

¶ 26 D.B. testified that she was fifty years old and disabled because of a hip impairment. She testified that in May 2013, she was waiting outside a hospital in a wheelchair for a taxi when a man offered her a ride home, which she accepted. When asked by the prosecutor if this man was in the courtroom, she could not identify Shores.

10

¶ 27     D.B. testified that the following evening, the man who had given her a ride came back to her apartment.  She testified that they were together in the living room for a while, and then he went into her bedroom.  Sometime later, she took a few sleeping pills (which she testified she took every night) and got ready for bed, but when she went into her bedroom she found the man asleep in her bed.

¶ 28     D.B. testified that she lay down next to the man on the bed and started to fall asleep; "the next thing [she] kn[e]w," he was having intercourse with her.  She testified that she did not consent to the intercourse, and it was very painful for her because of the pressure it put on her bad leg.  She later noticed blood when she went to the bathroom, and she had pain in her "pelvic area."  The next morning, after the man had left, D.B. told her in-home caregiver about the blood.  Her caregiver called the police, and D.B. went to the hospital.

¶ 29     A nurse who examined D.B. at the hospital testified that she noted blood in D.B's vaginal area and also saw several injuries.  The nurse performed a sexual assault examination kit, from which the

police obtained DNA evidence. A DNA analyst testified that the DNA evidence matched a DNA sample from Shores.

¶ 30 In closing argument, the prosecutor discussed the similarities between the victim and D.B., arguing that they showed that Shores "had a common plan, scheme or design to target vulnerable women with disabilities and a lot of limitations" and sexually assault them. The prosecutor also argued that the evidence relating to D.B. showed lack of consent and absence of mistake or accident: that the evidence made it unlikely that Shores had a consensual encounter with the victim but was mistakenly accused of sexual assault because someone else coincidentally assaulted her shortly afterward.

¶ 31 Before deliberations, the jury was provided with a written limiting instruction providing the purposes for which the evidence could be considered and stating that evidence admitted for a limited purpose could not be considered except for that purpose.

### B. Law

¶ 32 Relevant evidence is generally admissible at criminal trials. CRE 401. However, specific evidentiary rules limit the admissibility of certain types of evidence, relevant or not. CRE 403 excludes

evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." Evidence may also be excluded under CRE 404(b), which prohibits the admission of evidence of "other crimes, wrongs, or acts . . . to prove the character of a person in order to show that he acted in conformity therewith" (often described as propensity).

¶ 33     CRE 404(b) thus excludes other acts evidence if its only logical relevance "depends upon an inference that a person who has engaged in such misconduct has a bad character and the further inference that the defendant therefore engaged in the wrongful conduct at issue." *People v. Spoto*, 795 P.2d 1314, 1318 (Colo. 1990). But such evidence may be admissible if admitted for purposes independent of an inference of bad character such as to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." CRE 404(b); *see also Yusem*, 210 P.3d at 463.

¶ 34     In *Spoto*, 795 P.2d at 1318, the Colorado Supreme Court derived from these rules a four-part test to determine whether other acts evidence is admissible. To be admissible, (1) the other acts evidence must relate to a material fact; (2) the evidence must be

logically relevant; (3) the logical relevance must be independent of the inference prohibited by CRE 404(b) that the defendant was acting in conformity with his bad character; and (4) the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice caused by its admission. *Id.*; *see also People v. Jones*, 2013 CO 59, ¶ 15.

¶ 35    In cases involving sexual offenses, including first degree sexual assault under the pre-2000 version of section 18-3-402, the General Assembly has "specifically delineated the CRE 404(b) admissibility requirements for other acts evidence." *Jones*, ¶ 13 (citing § 16-10-301(1)); *see also* § 16-10-301(2). The General Assembly has declared that in cases involving sexual offenses, "there is a greater need and propriety for consideration by the fact finder of evidence of other relevant acts of the accused . . . whether occurring prior to or after the charged offense," and thus "it is expected that normally the probative value of such evidence will outweigh any danger of unfair prejudice, even when incidents are remote from one another in time." § 16-10-301(1).

¶ 36    Under section 16–10–301(3), the prosecution "may introduce evidence of other acts of the defendant to prove the commission of

the offense as charged for any purpose other than propensity."

Such purposes include:

> Refuting defenses, such as consent . . . ; showing a common plan, scheme, design, or modus operandi, regardless of whether identity is at issue and regardless of whether the charged offense has a close nexus as part of a unified transaction to the other act; showing . . . absence of mistake or accident; or for any other matter for which it is relevant.

*Id.*

## C. Application

¶ 37 Shores argues that because the only common factor between this case and D.B.'s is the DNA evidence, the evidence relating to D.B. served no purpose other than that prohibited under CRE 404(b): to show that Shores sexually assaulted D.B. and thus was a bad person, and to infer he therefore sexually assaulted the victim. We reject this argument and conclude that the trial court did not abuse its discretion in determining that the evidence met all four prongs of the *Spoto* test.

### 1. Material Fact — *Spoto* Prong One

¶ 38 A material fact is a fact "that is of consequence to the determination of the action." *Spoto*, 795 P.2d at 1318 (citation

15

omitted).  Generally, CRE 404(b) evidence can be used to prove the actual elements of a charged offense (also called ultimate facts): "that the accused committed the guilty act" — his "identity" — and "that he did so with the required intent or state of mind and without legal excuse or justification."  *People v. Rath*, 44 P.3d 1033, 1040 (Colo. 2002); *see also Yusem*, 210 P.3d at 464.  CRE 404(b) evidence can also establish "intermediate facts, themselves probative of ultimate facts."  *Yusem*, 210 P.3d at 464.  Plan, scheme, design, and modus operandi, for example, are "well-accepted methods of proving the ultimate facts necessary to establish the commission of a crime, without reliance upon an impermissible inference from bad character."  *Rath*, 44 P.3d at 1040.

¶ 39  First degree sexual assault was defined under the pre-2000 statute as the knowing infliction of sexual intrusion or sexual penetration on a victim where the defendant "cause[d] submission of the victim through the actual application of physical force or physical violence."  Ch. 171, sec. 1, § 18-3-402(1)(a), 1975 Colo. Sess. Laws 628; *see also* Ch. 199, sec. 1, § 18-3-402(1), 1983 Colo. Sess. Laws 698.  The statute "equate[d] the victim's nonconsent

with proof that the defendant . . . caused the victim's submission by force," and thus the conduct prohibited by the statute "by its very nature negate[d] the existence of the victim's consent." *Dunton v. People*, 898 P.2d 571, 573 (Colo. 1995).

¶ 40    Because Shores conceded that he had intercourse with the victim, the only issue at trial was whether Shores caused the victim to submit by force or violence or whether the victim consented. Shores' "defense theory of consent concern[ed] the material fact of the actus reus of sexual assault" because the prosecution had to prove that the victim did not consent to having sex with Shores — that he caused her submission by force instead. *People v. Everett*, 250 P.3d 649, 655-56 (Colo. App. 2010). The evidence relating to D.B. — as admitted for the purpose of refuting the defense of consent or showing a common plan, scheme, design, or absence of mistake or accident — bore on this issue. It therefore was probative of the ultimate fact of whether or not Shores committed the offense charged. *See Rath*, 44 P.3d at 1040; *see also Everett*, 250 P.3d at 655 ("Because the defendant's use of force or [violence] is an element of the crime of sexual assault, and because such conduct is relevant to prove that the victim did not consent, evidence of other

17

acts that is offered to prove the defendant's actions at the time of the sexual encounter relates to a genuinely disputed material fact.") (citation omitted).

### 2. Logical Relevance Independent of Bad Character Inference — *Spoto* Prongs Two and Three

¶ 41    Evidence of other acts is logically relevant to prove a material fact if "it has a tendency to make the existence of the fact more or less probable than it would be without the evidence." *Kaufman v. People*, 202 P.3d 542, 552 (Colo. 2009).  Evidence indicating a common plan may be relevant under this standard when, "because of the striking similarities in the acts, the evidence makes it at least somewhat more probable that [the] defendant was . . . implementing the plan in committing the crime alleged." *People v. Delgado*, 890 P.2d 141, 144 (Colo. App. 1994).

¶ 42    Here, the evidence relating to D.B. indicated that Shores engaged in a similar pattern of behavior — intercourse that caused pain and vaginal injury — with victims who shared similar characteristics — older women whose disabilities made them particularly vulnerable.  Because of these similarities, the evidence related to D.B. makes it more probable that Shores was

18

implementing a common plan when he had intercourse with the victim, and the fact that he had a nonconsensual sexual encounter with D.B. makes it more probable that one element of this plan was use of force rather than consent. In this way, the relevance of the evidence is not that it shows Shores as the type of person who sexually assaults women, which would be the prohibited bad character inference. Rather, "[t]he inference relied on arises . . . from the demonstration of [Shores'] pattern of using a particular technique to accomplish a particular end." *Rath*, 44 P.3d at 1041.

¶ 43    Accordingly, the evidence relating to D.B. was logically relevant independent of the bad character inference because it had a tendency to make it more probable that the victim did not consent than it would be without the evidence. *See Kaufman*, 202 P.3d at 552.

### 3.  CRE 403 — *Spoto* Prong Four

¶ 44    In assessing the probative value of the evidence, a court must assess the evidence's "incremental" probative value: what weight the evidence adds to the prosecution's case. *Rath*, 44 P.3d at 1041. In so doing, the court weighs "the logical force of the evidence and the proponent's need for the evidence in light of other available

19

evidence." *Id.* (citation omitted). The court then must balance the evidence's incremental probative value against the danger of unfair prejudice, "afford[ing] the evidence the maximum probative value attributable by a reasonable fact finder and the minimum unfair prejudice to be reasonably expected." *Id.* at 1043.

¶ 45 In assessing this prong of *Spoto*, the trial court concluded that it could not say that the probative value of the evidence relating to D.B. would be substantially outweighed by unfair prejudice. The court emphasized that the incident involving D.B. was "similar in important respects" to that involving the victim and "directly address[ed] [Shores'] defense of consent." We conclude that the court acted within its discretion in making this determination.

¶ 46 Because the victim had died and no statements of hers were admitted (and Shores did not testify), there was no direct evidence regarding consent. Although the testimony regarding the victim's injuries and her mental competency provided circumstantial evidence that she did not consent, the evidence relating to D.B. added substantial strength to that inference. The prosecution's need for the evidence thus was great. *See Rath*, 44 P.3d at 1041.

¶ 47 Shores argues that because of the remoteness in time and location of the incidents and their factual distinctions, the probative value of the evidence relating to D.B. was negligible. However, remoteness is only one factor a court should consider in determining the probative value of other acts evidence, *see Adrian v. People*, 770 P.2d 1243, 1245-46 (Colo. 1989), and the General Assembly has expressed a policy favoring the admission of other acts evidence "even when incidents are remote from one another in time." § 16-10-301(1).

¶ 48 Moreover, "CRE 404(b) contains no separate requirement of similarity." *Rath*, 44 P.3d at 1041. Although similarity may be necessary to give the evidence probative force if admitted for certain purposes, *see id.* at 1042, "it is not essential that the means of committing the other crimes replicate in all respects the manner in which the crime charged was committed," *People v. Garner*, 806 P.2d 366, 375 (Colo. 1991). The trial court determined that neither "the nearly two decades" between the two incidents nor their dissimilarities prohibited admission in light of their similarities and the evidence's relevance to the issue of consent. This determination

was not manifestly arbitrary, unreasonable, or unfair. *See Williams*, ¶ 18.

¶ 49     The trial court also instructed the jury on the limited purposes for which it could consider the other acts evidence, thus "alleviat[ing] the risk that the jury would use the testimony for the prohibited purpose of inferring" bad character and conformity therewith. *Spoto*, 795 P.3d at 1321. The prosecutor argued only these limited purposes during closing argument and did not suggest that the jury should consider evidence relating to D.B. to infer that Shores was the type of person who committed sexual assault. To the contrary, the prosecutor explicitly told the jury that it should not, and was not allowed to, decide that Shores was a bad person for assaulting D.B. and therefore must have committed the assault against the victim.

¶ 50     Accordingly, the trial court did not abuse its discretion in determining that the probative value of the evidence relating to D.B. was not substantially outweighed by the danger of unfair prejudice caused by its admission.[3]

_____

[3] In his reply brief, Shores appears to raise a sufficiency of the evidence challenge, but he did not make a similar argument in his

## IV. Conclusion

¶ 51    The judgment of conviction is affirmed.

JUDGE ROMÁN and JUDGE BERNARD concur.

---

opening brief.  We generally do not consider arguments raised for the first time in reply briefs.  *See People v. Montante*, 2015 COA 40, ¶ 58 n.4.