## No. 22999.

### JOSEPH DYRE MORSE *v.* THE PEOPLE OF THE STATE OF COLORADO.

(452 P.2d 3)

Decided March 24, 1969. Rehearing denied April 14, 1969.

Francis R. Salazar, Robert L. Pitler, for plaintiff in error.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, for defendant in error.

*En Banc.*

Mr. Chief Justice McWilliams delivered the opinion of the Court.

Joseph Dyre Morse, hereinafter referred to as the defendant, was convicted by a jury of the crime of first degree murder and the penalty imposed by the jury was that of life imprisonment in the state penitentiary. By the present writ of error the defendant seeks reversal of the judgment and sentence thus entered.

The only matter presented in this court which was raised during trial and thereafter assigned as error in the motion for a new trial concerns the admission into evidence of statements made by the defendant to the police, as well as certain other evidence obtained as a result of defendant's aforesaid statements to the police. It is claimed that such evidence was inadmissible because the defendant was not fully and adequately advised of his right to counsel, particularly as relates to his right to counsel without cost to him, if he be indigent and without funds to retain private counsel. In short, it is claimed the mandate of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2nd 694 was not followed. A bit of background material will put this particular argument in proper focus and at the same time demonstrate that the contention is without merit.

One Elaura Jeanne Jaquette was brutally bludgeoned to death on July 9, 1966. The defendant was taken into custody on August 5, 1966. The *first* thing the arresting officers did was to read — and then explain — to the defendant a so-called "Advisement Form," which form was thereafter signed by the defendant. Contained in this form was the statement that the defendant had a right to remain silent, that any statement he made could be used against him, and that he had a "right to the presence of an attorney, either retained or appointed." The evidence was that the defendant indicated to the arresting officers that he knew the difference between retained and appointed counsel, and that he didn't want any counsel, retained or appointed, as he had "nothing to hide."

There was other testimony that on August 5 and 6, 1966, the defendant on several occasions was readvised of the constitutional rights above referred to and that he signed one or two more of the so-called "Advisement Form." Additionally, the defendant signed a "Consent to Search" form in which he granted permission to the Boulder police to search his home.

On August 7, 1966 the defendant was taken before a Boulder municipal judge, where he was again advised, and this time by the judge, of his various constitutional rights, including the right to counsel without expense to him, if he be indigent. And on this occasion too, the defendant declared that he did not want to confer with counsel, stating that he had "no reason for an attorney."

On August 9, 1966 the defendant was formally charged with the crime of murder in the first degree and thereafter he was represented upon trial by court appointed counsel. However, it should be parenthetically noted, that on writ of error he is now represented by retained counsel.

At the outset of the trial proper counsel for the defendant made an oral motion to suppress the statements made by the defendant to the police, and in support thereof the defendant — not the district attorney — called

several police officers who testified concerning the warnings referred to above. The defendant also called as a witness the municipal judge who, as previously indicated, had also advised defendant of his several constitutional rights. The defendant did not testify in connection with his motion to suppress, nor at the trial of this matter. Based on the evidence before it, the trial court then denied defendant's motion to suppress and upon trial admitted into evidence the statements made by the defendant to the police. In this regard it should be noted that we are not here concerned with a confession. Rather, the defendant denied murdering Miss Jaquette and his several statements concerned his activities on the day of the murder, statements which incidentally were demonstrated by other testimony to be false.

 Our study of the record convinces us that under the circumstances which have been above summarized the trial court did not err in denying defendant's motion to suppress and in thereafter admitting into evidence the statements made by the defendant to the police. The mandate of *Miranda* having been followed by the Boulder authorities, we find no error in this regard.

 All other matters urged upon us in this court were not raised during trial, nor were any of them contained in defendant's motion for a new trial. Such being the posture of these various other matters, we elect not not resolve — or attempt to resolve — these matters on their merits. Indeed it would be virtually impossible to resolve these other matters, save one, in any intelligent manner on the basis of the record now before us. We realize that some, if not all, of these other matters, may be raised in a 35 (b) proceeding, but we perceive no good reason for in effect converting this writ of error into a 35 (b) proceeding. In support of our determination of this phase of the controversy see R.C.P. Colo. 37 (b) and *Dennison v. People,* 161 Colo. 546, 423 P.2d 839, *Brown v. People,* 158 Colo. 561, 408 P.2d 981 and *Lucero v. People,* 158 Colo. 568, 409 P.2d 278. Language from

498

*Lucero* is particularly apropos. In that case we observed as follows:

"As we have pointed out in numerous prior decisions, the 'contemporaneous objection' rule and the requirement that error be preserved by raising the objection with particularity in the motion for a new trial have a salutary purpose in the orderly administration of justice in this state. These rules have often been recognized by the United States Supreme Court as adequate state grounds which prevent review of a constitutional question by that Court."

The one new matter urged upon us in this court which can be adequately reviewed on the basis of the record now before us concerns the sufficiency of the evidence. In this regard we have carefully reviewed and analyzed the incriminating evidence adduced by the People upon trial and we find it amply sufficient, though it be entirely circumstantial in nature, to support the jury's verdict that Miss Jaquette was brutally beaten to death by this defendant in the perpetration of one of the felonies enumerated in C.R.S. 1963, 40-2-3. See *Corbett v. People,* 153 Colo. 457, 387 P.2d 409, as to the quantum of circumstantial evidence necessary to support a conviction for murder in the first degree.

The judgment is affirmed.