COLORADO COURT OF APPEALS                                    2017COA124

Court of Appeals No. 13CA2021
City and County of Denver District Court Nos. 11CR3189 & 11CR4812
Honorable Brian R. Whitney, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Roger Jay Kadell,

Defendant-Appellant.

SENTENCE REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE WELLING
Graham, J., concurs
J. Jones, J., concurs in part and dissents in part

Announced October 5, 2017

Cynthia H. Coffman, Attorney General, Megan C. Rasband, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Karen Mahlman Gerash,
Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1 The defendant, Roger Jay Kadell, appeals the trial court's imposition of a sentence under the habitual criminal statute. Kadell contends that there is insufficient evidence that he was convicted of three qualifying felonies before his current convictions. We agree and conclude that, as a matter of first impression, for a prior drug felony conviction to qualify as a predicate offense under the habitual criminal statute, the prosecution must prove that the prior offense of conviction remained a felony under Colorado law at the time the defendant committed the new offense, even when the prior conviction was entered in Colorado. Because the prosecution did not present sufficient evidence of this fact at Kadell's sentencing hearing, we reverse Kadell's sentence and remand for further proceedings.

## I. Background

¶ 2 A jury convicted Kadell of six counts of robbery and one count of aggravated motor vehicle theft, each of which is a class 4 felony. Before sentencing, the trial court adjudicated Kadell a habitual criminal based on three prior felony convictions: in 1997 for attempted cultivation of marijuana; in 2005 for theft-by-receiving; and in 2006 for aggravated motor vehicle theft. The trial court

1

imposed a sentence of twenty-four years in the custody of the Department of Corrections, four times the presumptive maximum sentence for a class 4 felony, in accordance with the habitual criminal statute.

## II.    Analysis

¶ 3    Kadell raises three issues on appeal.  First, he contends that the trial court misapplied the habitual criminal statute.  Second, he contends the trial court erred by denying a motion to suppress his prior convictions.  Finally, Kadell contends the trial court erred by failing to give his sentence an extended proportionality review.  We examine each of these issues in turn.

### A.    Habitual Criminal Finding

¶ 4    Kadell contends that his 1997 conviction for attempted cultivation of marijuana does not count as a felony under the habitual criminal statute.  He argues that in 2011, when he committed his offenses in this case, attempted cultivation of marijuana was no longer a felony in Colorado unless the defendant possessed more than six plants and because the trial court had no evidence of how many plants were involved in the 1997 conviction,

that conviction could not have counted as a predicate felony under the habitual criminal statute.  We agree.

## 1. Standard of Review

¶ 5    Kadell frames his argument as a challenge to the sufficiency of the evidence.  Ordinarily, a defendant may raise a sufficiency of the evidence claim for the first time on appeal.  *People v. Garcia*, 2012 COA 79, ¶ 35.  But Kadell's argument is no ordinary sufficiency of the evidence of challenge; rather, his claim is premised solely on an interpretation of the habitual criminal statute.

¶ 6    During the habitual phase of trial, Kadell did not raise the statutory interpretation argument he now advances on appeal.  Instead, Kadell made a general argument that there was insufficient evidence that he committed any of the prior felonies.  Because of this, the People contend that the issue should be reviewed only for plain error.  *See Hagos v. People*, 2012 CO 63, ¶ 18.  Kadell disagrees.  The same disagreement divides this court.[1]  *Compare*

---

[1] Our supreme court has granted certiorari in a case involving this very issue and that case will likely resolve the appropriate standard of review to apply when a defendant challenges the sufficiency of the evidence by raising a novel issue of statutory interpretation for

*People v. McCoy*, 2015 COA 76M, ¶¶ 21, 36 (defendant may, for the first time on appeal, argue a sufficiency of the evidence claim which is dependent on an statutory interpretation) (*cert. granted in part* Oct. 3, 2016), *with People v. Heywood*, 2014 COA 99, ¶ 38 (applying plain error standard because "unpreserved sufficiency claim is no different than any other unpreserved error"), *and People v. Lacallo*, 2014 COA 78, ¶¶ 6, 20 (applying plain error standard to defendant's statutory argument that was not "even impliedly" raised in trial court). We do not need to stake out a position in this dispute, however, because we conclude that the trial court's decision to count Kadell's 1997 felony conviction as a prior felony under the habitual criminal statute necessitates reversal even on plain error review.

### 2. Habitual Criminal Statute and Changes in the Law

¶ 7    Before discussing how the trial court's interpretation necessitates reversal, it is helpful to discuss how the habitual criminal statute deals with underlying convictions when there has been a change in law.

---

the first time on appeal. *See Maestas v. People*, (Colo. No. 15SC180, Oct. 26, 2015) (unpublished order).

¶ 8    Under the habitual criminal statute, every person convicted of a felony who has been three times previously convicted of a felony shall be adjudged a habitual criminal and shall receive a sentence of four times the maximum presumptive range.  § 18-1.3-801(2)(a)(I), C.R.S. 2017.  Kadell was so adjudicated in this case.  The statute contains an exception, however, that "[n]o drug law conviction shall be counted as a prior felony conviction . . . unless such prior offense would be a felony if committed in this state at the time of the commission of the new offense."  § 18-1.3-801(3).

¶ 9    In 1997, Kadell pleaded guilty to a class 5 felony of attempted cultivation of marijuana.  The Colorado statute under which Kadell pleaded guilty in 1997 provided that it was a crime for a person to knowingly "cultivate, grow, produce, process, or manufacture any marihuana or marihuana concentrate," regardless of quantity.  § 18-18-406(8), C.R.S. 1997.  Attempt to cultivate marijuana was a class 4 or 5 felony depending on whether it was the defendant's first offense under that section.  *Id.*; *see also* § 18-2-101(4), C.R.S. 1997 (attempt to commit class 4 felony is a class 5 felony).

¶ 10    In 2011, when Kadell committed the offenses in this case, it was a class 6 felony to attempt to cultivate marijuana "if the offense

involv[ed] more than six but fewer than thirty plants." § 18-18-406(7.5)(b), C.R.S. 2011; *see also* § 18-2-101(4), C.R.S. 2011.[2]  But, in 2011, if the offense involved six or fewer plants, attempted cultivation of marijuana was a class 2 misdemeanor.  § 18-18-406(7.5)(a), C.R.S. 2011; *see also* § 18-2-101(6), C.R.S. 2011 (attempt to commit class 1 misdemeanor is a class 2 misdemeanor).  So, in 1997, attempted cultivation of marijuana was a felony no matter how many plants were involved, whereas in 2011 the crime was only a felony if the prosecution proved that the offense involved more than six plants.

¶ 11    The question, from a sufficiency of the evidence standpoint, becomes whether the evidence introduced during the habitual phase of the trial in this case is sufficient to prove that Kadell's 1997 conviction for attempted cultivation of marijuana would still be a felony in 2011, meaning that it involved more than six plants.  On this point, the parties agree, and the record supports, that

---

[2] With respect to classifying the crime based on the number of plants, the statute remains largely unchanged today.  *See* § 18-18-406(3)(a)(II), C.R.S. 2017 (a person commits level 4 drug felony if he or she knowingly cultivates, grows, or produces more than six but fewer than thirty marijuana plants).

evidence introduced during the habitual phase of trial does not establish that more than six plants were involved in Kadell's 1997 conviction.

### 3. The Trial Court Erred by Not Applying Section 18-1.3-801(3) to Kadell's 1997 Conviction

¶ 12    We now turn to the People's contention that, given the language of the statute, the exception found in subsection (3) does not apply to Kadell's 1997 conviction.

¶ 13    In interpreting a statute, our primary goals are to discern and give effect to the General Assembly's intent. *People v. Shores*, 2016 COA 129, ¶ 16. We look first to the statutory language, giving the words and phrases their plain and ordinary meanings. *Id.* After doing this, if we determine that the statute is not ambiguous, we enforce it as written and do not resort to other rules of statutory construction. *Id.* "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *People v. Diaz*, 2015 CO 28, ¶ 13 (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).

¶ 14    First, the People argue that the section of the statute exempting prior felony drug convictions applies only to out-of-state felony drug convictions.  We disagree.

¶ 15    The plain language of the statutory exception at issue here provides that a "drug law conviction" is exempt from counting towards a defendant's prior felony convictions under habitual criminal statute if the underlying drug offense is no longer a felony in Colorado.  § 18-1.3-801(3).

¶ 16    Nothing in the plain language of the statute suggests that it applies only to out-of-state convictions.  The statute refers broadly to a "drug law conviction" without any apparent limitation as to the state of conviction.  *Id.*  The only modifier clarifies that the "drug law conviction" must still be a felony "in this state," meaning that a drug law conviction must be a felony in Colorado, and not necessarily that it must be a felony in the jurisdiction where it arose, at the time the new offense was committed.  *Id.*  Because the plain language is clear, we must apply the statute as written and conclude that the exception found in subsection (3) applies to Colorado drug law convictions.

¶ 17　　The People also argue that subsection (3) should apply only to out-of-state convictions because other portions of the habitual criminal statute make specific reference to out-of-state convictions. We are not persuaded.

¶ 18　　The habitual criminal statute provides generally that qualifying felonies include those crimes that were felonies "under the laws of any other state, the United States, or any territory subject to the jurisdiction of the United States," if the crime would be a felony in Colorado.  *See* § 18-1.3-801(1)(b)(II) (lifetime habitual sentence); § 18-1.3-801(1.5) (little habitual sentence); § 18-1.3-801(2) (big habitual sentence).  But the legislature's use of this language in other subsections favors Kadell's suggested interpretation of subsection (3), not the People's.

¶ 19　　In telling contrast to subsections (1)(b)(III), (1.5), and (2), subsection (3) does not mention or distinguish out-of-state convictions from those suffered in Colorado.  Instead, it simply provides that the exception applies to a "drug law conviction."  This linguistic distinction has been present since the General Assembly first enacted subsection (3).

¶ 20    Subsection (3) first appeared in 1976 and remains unchanged today.  Ch. 93, sec. 6, § 16-13-101(3), 1976 Colo. Sess. Laws 548. When subsection (3) was enacted, the statute already included language akin to the current subsections (1)(b)(III), (1.5), and (2). § 16-13-101(1) and (2), C.R.S. 1976.  As the statute existed in 1976, crimes that triggered habitual criminal penalties included felonies "under the laws of any other state, the United States, or any territory subject to the jurisdiction of the United States."  *Id.* Despite having included language in other parts of the statute specifically referencing out-of-state convictions, the legislature left such language out of subsection (3).

¶ 21    The General Assembly has amended the habitual statute multiple times since 1976, without ever adding a reference to out-of-state convictions in subsection (3).[3]  So, even though subsections (1)(b)(III), (1.5), and (2) specifically reference out-of-state convictions, subsection (3) has remained consistent in that it lacks that similar language.  The consistency of subsection (3) and its

---

[3] Those amendments include a significant revision in 2002 when many criminal procedure statutes, including the habitual criminal statute, were moved from Title 16 to Title 18.  *See* Ch. 318, sec. 2, § 18-1.3-801, 2002 Colo. Sess. Laws 1426-28.

distinct language further supports the conclusion that had the legislature intended subsection (3) to apply only to out-of-state crimes, it would have said so. *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1010 (Colo. 2008) ("[T]he use of different terms [in a statute] signals an intent on the part of the General Assembly to afford those terms different meanings."). To conclude otherwise would have us read words where none exist. *Colo. Dep't of Revenue v. Creager Mercantile Co.*, 2017 CO 41M, ¶ 25 (Courts must "not substitute or add words to statutes.").

¶ 22 Next, the People contend that the 1997 conviction counts as a prior felony under the habitual criminal statute because cultivation of marijuana *could be* a felony under the 2011 statute. Again, the language of the statute belies the People's urged interpretation. The statute provides that a drug conviction only counts if the "prior offense *would* be a felony" when the defendant commits the new offense. § 18-1.3-801(3) (emphasis added). The statute does not provide that a drug-law felony counts as a prior felony under the habitual criminal statute if at the time of the new offense there was a possibility that the defendant *could* face a felony charge under Colorado law.

¶ 23    During the habitual phase of trial, the prosecution bears the burden of proving beyond a reasonable doubt that the defendant was previously convicted as alleged in the habitual counts. *People v. Nunn*, 148 P.3d 222, 225 (Colo. App. 2006). In this case, the prosecution alleged that Kadell was convicted of felony attempted cultivation of marijuana. And given its language, the statute imposes another burden on the prosecution — to establish that the 1997 felony "would be a felony" if committed in 2011, when Kadell committed the offenses in this case. § 18-1.3-801(3). As discussed above, the People presented insufficient evidence at Kadell's sentencing hearing to carry this latter burden.

¶ 24    Finally, the People contend that exempting Colorado drug law convictions from the reach of subsection (3) comports with the overall purpose of the habitual criminal statutory scheme, which is to punish recidivist offenders. *See People v. Dist. Court*, 711 P.2d 666, 670 (Colo. 1985) ("The purpose of the Habitual Criminal Act is to punish more severely those individuals who show a propensity toward repeated criminal conduct."). But only when the statute is ambiguous do we look beyond its text and deploy interpretative tools such as the legislative history or the ends the General

12

Assembly was attempting to attain. *McCoy*, ¶ 38.[4] Section 18-1.3-801(3) is unambiguous, so we venture no further and, instead, apply the statute as written.

### 4. Plain Error

¶ 25    As discussed above, we assume a plain error standard of review applies to this case. Plain error is error that is both obvious and substantial. *Hagos*, ¶ 18. While substantiality is not in dispute, obviousness is. An obvious error is one that contravenes a clear statutory command, a well-settled legal principle, or Colorado case law. *People v. Pollard*, 2013 COA 31M, ¶ 40. There are no reported decisions interpreting subsection (3) so the trial court could not have contravened Colorado case law and the application of subsection (3) is far from a well-settled legal principle, but the trial court did contravene the statute.

¶ 26    The People contend that the error is not obvious because nothing in the statute or case law would have alerted the court to

---

[4] Even if the statute was ambiguous, "no legislation pursues its purposes at all costs." *Rodriguez v. United States*, 480 U.S. 522, 525-26 (1987). The language in subsection (3) evinces a legislative intent to temper the reach of the habitual sentencing scheme with respect to defendants who had previously suffered felony drug law convictions for conduct that is no longer a felony in Colorado.

13

the error. *See People v. Mendoza*, 313 P.3d 637, 641 (Colo. App. 2011). But the trial court is deemed to know the statute. *People v. Helms*, 2016 COA 90, ¶ 69. While the lack of prior guidance is one consideration we must take into account when determining whether the trial court committed obvious error, it is not the only consideration. Violating a statute can be obvious error even if it is not coupled with another error. *People v. Mosley*, 167 P.3d 157, 161 (Colo. App. 2007) (trial court commits obvious error by failing to follow statutory procedure for child victim testimony), *aff'd*, 2017 CO 20. Further, as discussed above, our interpretation of subsection (3) is informed by nothing more than its plain language. When we rely only on the plain language of the statute, an error is more likely to be obvious. *Heywood*, ¶ 36 (error is obvious because court applies general meaning to terms and statute is unambiguous); *see also United States v. Hernandez*, 690 F.3d 613, 622 (5th Cir. 2012) (error is particularly obvious when it involves a "straightforward misapplication" of the plain language of a sentencing guideline).

¶ 27     For these reasons, we conclude that the trial court's failure to consider the application of subsection (3) was an obvious error.

And because the error resulted in Kadell being sentenced under the big habitual provision without sufficient evidence that his 1997 conviction counted as a prior felony, the error was substantial, and, therefore, we conclude that the trial court committed plain error.

¶ 28     In summary, we conclude that under the plain language of section 18-1.3-801(3), a drug-law felony, regardless of what jurisdiction the conviction arose from, does not count as a prior felony under the habitual criminal statute unless the prosecution proves that the prior felony was still a felony in this state at the time of the commission of the new offense.  Because the record does not support that Kadell was convicted in 1997 of a 2011 drug-law felony, the 1997 conviction does not count as a prior felony under the habitual criminal statute.  The trial court's failure to consider the application of subsection (3) to Kadell's felony conviction constitutes plain error.  Accordingly, we remand the case for resentencing.  But what does that resentencing proceeding look like?  That is where we turn next.

### 5.     Procedure on Remand

¶ 29     Kadell requests that we remand the case with directions to impose a sentence commensurate with him having two prior felony

convictions.[5] That remedy, however, would foreclose the prosecution's opportunity to prove that the 1997 conviction involved six or more plants, proof necessitated by contentions Kadell raised for the first time on appeal.

¶ 30    As discussed above, subsection (3) was never mentioned either before or during the habitual phase of the trial. In the sentencing context, remand is appropriate when we disagree with the trial court's interpretation of a statute. *See People v. Archuleta-Ferales*, 2014 COA 178, ¶ 10 (remanding for further proceedings when court of appeals provides a statutory interpretation of the drug offender surcharge statute). This is especially true when the prosecution did not have an opportunity to prove its case in the first instance. *See People v. Gomez*, 211 P.3d 53, 57 (Colo. App. 2008) (holding that while *Curtis* advisement was inadequate, prosecution was entitled to show that defendant's choice not to testify was nevertheless

---

[5] In addition to sentencing a defendant who has three prior felonies, the habitual statute allows for a shorter sentence for defendants who have two prior felonies in the proceeding ten years. § 18-1.3-801(1.5), C.R.S. 2017. Kadell does not dispute that the other two predicate felonies can serve as the basis for a habitual criminal sentence.

16

voluntary), *abrogated on other grounds by Moore v. People*, 2014 CO 8.

¶ 31    An exception, of course, would be if a subsequent proceeding exposes the defendant to double jeopardy.  But, in *People v. Porter*, 2015 CO 34, ¶ 4, our supreme court held that double jeopardy did not bar a subsequent habitual proceeding in a second trial when the judgment in the first trial was reversed on appeal.  According to *Porter*, both the Colorado and Federal Constitutions ensure that a defendant will not be twice put in jeopardy for the "same offense," but the habitual criminal statute creates a status rather than an offense.  *Id.* at ¶ 26.  So, no jeopardy concerns arise with respect to remanding the case for additional habitual proceedings.

¶ 32    Thus, we remand the case for proceedings to determine the applicability of section 18-1.3-801(3) to the 1997 conviction, namely whether Kadell's 1997 conviction would still be a felony under Colorado law in 2011, when Kadell committed the offenses in this case.  We would like to provide the trial court and parties more explicit guidance regarding what evidence would or would not be sufficient to prove that the 1997 conviction qualifies as a 2011 felony.  But because the application of section 18-1.3-801(3) to the

1997 conviction was not raised at Kadell's original sentencing hearing, the record in this case contains a dearth of information regarding what evidence may be available to be presented on remand. Accordingly, any more detailed guidance would constitute an advisory opinion, which must be avoided where, as here, we would be speculating as to the underlying facts and evidence that may be presented on remand. *See Bd. of Cty. Comm'rs v. Cty. Rd. Users Ass'n*, 11 P.3d 432, 438-40 (Colo. 2000) (an appellate court is not empowered to render advisory opinions over cases that are not ripe or based on facts that are contingent, speculative, or hypothetical); *People v. Becker*, 2014 COA 36, ¶ 29 ("Addressing the issues would therefore result in an advisory opinion, which risks improperly depriving the parties of their prerogative to litigate the case as they choose.").

## B. Collateral Attack on Convictions

¶ 33    Kadell next argues that the trial court erred by finding that his failure to timely file a collateral attack on his prior convictions was not the result of excusable neglect. The record does not reflect that the trial court ever ruled on Kadell's excusable neglect claim.

18

¶ 34     Shortly after the prosecution filed the habitual criminal counts, Kadell filed a motion to suppress his prior felony convictions, as a means of collaterally attacking those convictions. Motions to collaterally attack a felony conviction must be brought within three years of the conviction. § 16-5-402(1), C.R.S. 2017. Kadell's motion was untimely, but he argued that his failure to file within three years was a result of excusable neglect. *See* § 16-5-402(2)(d) (time limit is excused if court hearing the collateral attack finds that failure to file on time was the result of excusable neglect). The trial court never ruled on Kadell's excusable neglect claim.

¶ 35     At a post-trial status conference, when the matter was being covered by substitute defense counsel, the trial court indicated that it was "going to deny" Kadell's motion, but it set the matter over for a ruling, which would allow Kadell's counsel to make a record regarding the impending denial. The next day, with Kadell's counsel present, the trial court did not issue a ruling, but rather held the issue in abeyance so that counsel could submit transcripts from the prior cases to make a more complete record regarding Kadell's excusable neglect claim. After two more continuances, the trial court held a hearing where it made habitual criminal findings

19

and sentenced the defendant, but did not rule on the excusable

neglect issue.

¶ 36     At the final sentencing hearing, defense counsel requested

that the trial court "reconsider" its previous ruling regarding

excusable neglect.  The trial court responded,

> Reconsideration can take place afterwards, if I
> deem it's necessary, based . . . upon the
> evidence that you're going to file.  But we're
> going to get into a whole lot of superfluous
> matters, if we go back into the . . . evidence of
> lack of excusable neglect; which correct me if
> I'm wrong, I ruled they didn't exist in this case.

¶ 37     The court went on to say that excusable neglect can be

pursued on appeal or by seeking postconviction relief pursuant to

Crim. P. 35.  But the trial court, in fact, had never ruled.

¶ 38     The issue of excusable neglect is a question of fact to be

resolved first by the trial court.  *People v. Wiedemer*, 852 P.2d 424,

442 (Colo. 1993).  Courts must consider a number of factors in

addressing the applicability of the excusable neglect bar exception

including the following:

> (1) whether there are circumstances or outside
> influences preventing a challenge to a prior
> conviction and the extent to which a defendant
> having reason to question the constitutionality
> of a conviction investigates its validity and

> takes advantage of avenues of relief that are available;
>
> (2) whether a defendant had any previous need to challenge a conviction and either knew that the conviction was constitutionally infirm or had reason to question its validity;
>
> (3) whether a defendant had other means of preventing the government's use of the conviction so that a postconviction challenge was previously unnecessary; and
>
> (4) whether the passage of time has had an effect on the state's ability to defend against the challenge.

*People v. Martinez-Huerta*, 2015 COA 69, ¶ 12 (citing *Close v. People*, 180 P.3d 1015, 1019-20 (Colo. 2008); *Wiedemer*, 852 P.2d at 441-42). The trial court need not hold a hearing on a defendant's request to invoke the excusable neglect exception in every instance. *People v. Xiong*, 940 P.2d 1119, 1119 (Colo. App. 1997) (A court may summarily deny an untimely request "if the defendant has failed to allege facts which, if true, would establish justifiable excuse or excusable neglect."). But when the trial court fails to consider the factors that could establish excusable neglect, we must remand for further proceedings. *People v. Chavez-Torres*, 2016 COA 169M, ¶ 28 (Remand is appropriate where "the record is silent with respect to whether the district court considered and weighed these

factors."). Here, there is no indication that the trial court considered any of the factors or made the requisite findings.

¶ 39    On remand, if the trial court finds no justifiable excuse or excusable neglect, the trial court need not reach the merits of Kadell's collateral attack. *Martinez-Huerta*, ¶ 25. If, on the other hand, the trial court finds that Kadell's failure to timely file was the result of a justifiable excuse or excusable neglect, the trial court should address the merits of Kadell's claim. *Id.*

### C.    Proportionality Review

¶ 40    Last, Kadell seeks an extended proportionality review of his sentence. Under the Eighth Amendment a defendant is entitled to a proportionality review of his or her sentence, part of which involves evaluating the harshness of the penalty. *Solem v. Helm*, 463 U.S. 277, 291 (1983). In light of our conclusion in Part II.A of this opinion, the case must be remanded for resentencing. Therefore, Kadell's argument seeking an extended proportionality review is moot at this juncture. *Club Matrix, LLC v. Nassi*, 284 P.3d 93, 99 (Colo. App. 2011) (this court does not have to address arguments rendered moot by our disposition of other issues).

### III. Conclusion

¶ 41    Kadell's sentence is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.

JUDGE GRAHAM concurs.

JUDGE J. JONES concurs in part and dissents in part.

JUDGE J. JONES, concurring in part and dissenting in part.

¶ 42    I concur in the majority's decision to remand the case for the district court to decide whether defendant's failure to collaterally attack his prior convictions sooner was a result of excusable neglect.  But I dissent from the majority's reversal of the district court's habitual criminal adjudication based on defendant's prior felony marijuana cultivation conviction.

¶ 43    In resolving defendant's challenge to the district court's habitual criminal finding on his prior felony conviction for cultivation of marijuana, the majority says it applies the plain error test.  But it does so only assuming, without deciding, that plain error is the correct test.  In my view, because the claimed error — the court's finding despite an absence of proof that defendant's prior conviction involved more than six plants, as required by section 18-1.3-801(3), C.R.S. 2017 — is unpreserved, plain error is the only possible test.[1]  Applying the plain error test comports with

_____

[1] Defendant asserts that he did preserve the issue.  But his argument to the district court against this count wasn't the same one he makes on appeal.  Simply put, because he didn't draw the court's attention to the issue, it's not preserved.  *Martinez v. People*, 2015 CO 16, ¶¶ 13-14; *People v. Bossert*, 722 P.2d 998, 1010 (Colo.

the plain language of Crim. P. 52(b), Colorado precedent, what I believe to be a proper understanding of the applicability of the plain error standard, and the view of all federal courts of appeals and the clear majority of other state appellate courts.[2] And when I apply that test to this case, I conclude, contrary to the majority, that any error isn't obvious; consequently, I would affirm the district court's habitual criminal adjudication.

## I. Defendant's Challenge to His Prior Cultivation Conviction

¶ 44 Defendant's argument that the district court erred in finding that he had previously been convicted of a drug felony goes like this:

> 1. In 1997, he was convicted of cultivation of marijuana, at that time a felony in all circumstances. *See* § 18-18-406(8), C.R.S. 1997.

---

1986); *People v. Galang*, 2016 COA 68, ¶ 11; *People v. Gee*, 2015 COA 151, ¶¶ 42-46.

[2] Though defendant asserts in his opening brief that "it is not necessary to preserve a claim of insufficiency of evidence," in his reply brief he says that if we conclude his claim is not preserved we should, "at a minimum, review the contention under the plain error standard."

2. Sometime after his conviction, but before 2011, the General Assembly changed the law regarding cultivation of marijuana. So, in 2011 when he committed the offenses charged in this case, cultivation was a felony only if the defendant cultivated more than six plants; otherwise, it was a misdemeanor. *See* § 18-18-406(7.5)(a), (b), C.R.S. 2011.

3. Section 18-1.3-801(3) provides that a drug law conviction counts as a prior felony conviction for habitual criminal purposes only if it would be a felony if committed in Colorado at the time the new offense was committed.

4. The People were therefore required to prove that his prior conviction involved more than six plants.

5. The People didn't prove that his prior conviction involved more than six plants.

6. The trial court therefore erred in finding that his 1997 conviction counted as a felony for habitual criminal purposes and in calculating his sentence using that conviction.

¶ 45 The linchpin of defendant's argument is section 18-1.3-801(3). If he's right that it applies to his 1997 Colorado conviction, the court erred. If he isn't, the court didn't err.

## II. Analysis

### A. Standard of Review

#### 1. Two Inquiries: Was There an Error and Does the Error Require Reversal?

¶ 46 In many criminal cases in which a defendant challenges the sufficiency of the evidence for the first time on appeal, the parties frame the issue of the applicable standard of review as a choice between de novo review (the standard typically urged by the defendant) and plain error review (the standard typically urged by the People). But that's a false choice because those two tests aren't alternatives to each other. This is so because de novo review and plain error review apply to fundamentally different inquiries. The former applies, sometimes, when determining whether there was an error. The latter applies, sometimes, when determining whether an error requires us to reverse.

¶ 47 *Hagos v. People*, 2012 CO 63, helps make the point. In that case, the supreme court articulated the standards "that dictate

reversal of a conviction in criminal appeals," *id.* at ¶ 8: structural error, constitutional harmless error, harmless error, "[c]laims where the effect on the conviction is constitutionally material to the claim itself" (such as when the defendant claims ineffective assistance of counsel), plain error, and cumulative error, *id.* at ¶¶ 9-14 & n.2.[3] Notice that de novo review isn't among them. Neither are clear error and abuse of discretion, two other familiar standards of review. Those omissions weren't oversights. Those three standards apply to the determination of whether there was an error, and they apply the same regardless of whether the defendant preserved the claim of error. They don't apply to the determination of whether an error requires reversal.[4]

¶ 48　　Consider two hypotheticals.

---

[3] The court also included invited error, but I think that's more accurately characterized as a doctrine precluding review altogether. *See People v. Zapata*, 779 P.2d 1307, 1309 (Colo. 1989).

[4] My discussion assumes that the claim of error in a given case wasn't invited or waived. If either of those doctrines applies, we won't review the claim at all, under any standard. *Hinojos-Mendoza v. People*, 169 P.3d 662, 668 (Colo. 2007) (waiver); *Zapata*, 779 P.2d at 1309 (invited error).

¶ 49    First hypothetical: The defendant claims on appeal that the court erred in admitting hearsay evidence in violation of the rule against hearsay.  If the defendant preserved the issue with a contemporaneous objection, we'll decide whether any error requires reversal by applying the harmless error test.  *E.g.*, *Nicholls v. People*, 2017 CO 71, ¶ 17.  If he didn't, we'll decide that question by applying the plain error test.  *E.g.*, *People v. Miranda*, 2014 COA 102, ¶¶ 57-61, 69 (*cert. granted in part* Aug. 15, 2015).  But in either scenario we'll determine whether the trial court erred by asking whether the court abused its discretion.  *Nicholls*, ¶ 17; *Miranda*, ¶ 62.  Only if the defendant can get over that hurdle will the harmless or plain error test come into play.[5]

¶ 50    Second hypothetical: The defendant claims on appeal that the court erred in admitting hearsay testimony in violation of his rights under the Confrontation Clause.  If the defendant preserved the

[5] I recognize that every standard of reversal requires that there be some error, so it can be said that determining error is the first step of all such standards.  Even so, the test for determining whether there was an error is the same regardless of the standard of reversal.  I also recognize that sometimes the appellate court will skip the error step and go right to whether the error was harmless, or obvious, or affected the defendant's substantial rights.  But doing so doesn't affect the standard applicable to the error inquiry.

29

issue, we'll decide whether any error requires reversal by applying the constitutional harmless error test. *E.g.*, *Bernal v. People*, 44 P.3d 184, 200 (Colo. 2002). If he didn't, we'll decide that question by applying the plain error test. *E.g.*, *People v. Vigil*, 127 P.3d 916, 929 (Colo. 2006). But in either scenario we'll determine de novo whether the trial court erred. *Bernal*, 44 P.3d at 198. Absent a finding of any error, whether the constitutional harmless error or the plain error test applies is irrelevant.

¶ 51 In sum, properly understood, a "standard of review" actually has two parts — a "standard of error determination," if you will, and a "standard of reversal." *See United States v. Minners*, 362 F. App'x 931, 937 (10th Cir. 2010) (recognizing the distinction between the test for deciding whether there was an error and the "standard for reversal"). Conflating the two, as parties and courts sometimes do, not only creates confusion but risks deciding cases wrongly.

¶ 52 In the case before us, this understanding of standards of review means that de novo review isn't an option for our standard of

reversal.[6]  That leaves open the question of what our options are.

But before turning to that question, we need to determine the

applicable standard of error.  After all, if there wasn't an error, we

don't have to apply a standard of reversal.

### 2.  Standard of Error: De Novo

¶ 53    Defendant raises an insufficiency of the evidence challenge on

appeal, albeit not one of the usual variety.[7]  Ordinarily, a defendant

---

[6] It's important to remember what "de novo review" means.  It means that we accord no deference to the trial court's determination of an issue, but decide the issue as if looking at it anew.  *See Valdez v. People*, 966 P.2d 587, 598 (Colo. 1998) (Scott, J., concurring).  So by its terms it's a way of deciding whether the district court decided an issue correctly.  It says nothing about what we do if we decide the trial court didn't decide the issue correctly.

[7] When a defendant timely moved for a judgment of acquittal based on insufficiency of the evidence, the "error" is the trial court's denial of that motion and the entry of the judgment of conviction.  *E.g., United States v. Milan*, 494 F.3d 640, 643 (8th Cir. 2007) (characterizing the alleged error as "allowing the case to go to the jury"); *Williams v. State*, 543 N.E.2d 1128, 1129 (Ind. Ct. App. 1989) ("[T]here was no reversible error in the court's entering a judgment of conviction."); *State v. Prince*, Nos. ED 104539 & 104606, 2017 WL 3483660, *2-3 (Mo. Ct. App. 2017) ("[T]he trial court did not err in entering judgment against Defendant."); *see also People v. Allaire*, 843 P.2d 38, 40 (Colo. App. 1992) (framing the issue as whether "the trial court erred in entering judgment of conviction").  When a defendant fails to preserve the issue by appropriate timely motion, the error is the trial court's failure to sua sponte enter a judgment

challenging the sufficiency of the evidence straightforwardly argues that the evidence presented at trial wasn't sufficient to prove one or more of the elements of the offense: there is no dispute as to the meaning of the elements; the only dispute is whether the evidence showed that the defendant's conduct was within the scope of that meaning.

¶ 54     But in this case, the parties dispute what must be proved; that is, they dispute the meaning of one of the elements based on the interpretation of statutes.  Specifically, we must first decide whether section 18-1.3-801(3) affects the meaning of "felony" in section 18-1.3-801(2)(a)(I).  That's a question of statutory interpretation that we, of course, review de novo.  *People v. Perez*, 2016 CO 12, ¶ 8.

¶ 55     But if we agree with defendant's interpretation, where do we go from there?  Some would say that we should go straight to the usual sufficiency of the evidence test,[8] decide whether the

_____

of acquittal.  *E.g., United States v. Calhoun*, 721 F.3d 596, 600 (8th Cir. 2013); *Monroe v. State*, 652 A.2d 560, 562, 567 (Del. 1995); *Richardson v. United States*, 276 A.2d 237, 238 (D.C. 1971).

[8] That test is "whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of the accused's guilt

prosecution proved the additional fact (the number of plants), and, if we conclude that it did not, reverse without further analysis. For the reasons discussed below, I would instead apply the plain error test, asking whether the court's error in failing to apply defendant's ad hoc interpretation of section 18-1.3-801(3) was obvious and, if so, whether the error so undermined the fundamental fairness of the proceeding as to cast serious doubt on the district court's habitual criminal finding. *See Hagos*, ¶ 14.[9]

### 3. Standard of Reversal: Plain Error Review Is the Only Jurisprudentially Sound Option

¶ 56      Assuming that an unpreserved claim of error is reviewable at all (neither invited nor waived), Crim. P. 52(b) expressly provides a

---

beyond a reasonable doubt." *People v. Sprouse*, 983 P.2d 771, 777 (Colo. 1999). We review the record de novo to decide whether the prosecution met that test. *Dempsey v. People*, 117 P.3d 800, 807 (Colo. 2005).

[9] If an insufficiency claim is preserved, and the appellate court finds error under the de novo test, the standard of reversal would be constitutional harmless error because a conviction based on proof insufficient to meet the beyond a reasonable doubt standard is a due process violation. *Jackson v. Virginia*, 443 U.S. 307, 313-16 (1979). (As discussed below, the error doesn't qualify as structural.) It's difficult (though perhaps not impossible) to imagine that the People could ever show that the error was harmless beyond a reasonable doubt.

33

standard of reversal: "Plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." *See also* CRE 103(d). And Colorado case law currently recognizes only one other potential standard — structural error. *Hagos*, ¶¶ 10-14.[10] (Though some judges on this court have said that sufficiency of the evidence falls within its own special category of automatic reversal, I reject that notion, for

---

[10] Under federal law, even unpreserved claims of structural error are subject to plain error review. In *Johnson v. United States*, 520 U.S. 461 (1997), the Supreme Court rejected an argument that an alleged structural error was not subject to plain error review, saying, "the seriousness of the error claimed does not remove consideration of it from the ambit of [Fed. R. Civ. P. 52(b)]," and holding that it had no authority to create an exception to the plain error rule for alleged structural errors. *Id.* at 466; *see, e.g., United States v. Pennue*, 770 F.3d 985, 989 (1st Cir. 2014) (unpreserved claims of structural error are reviewed under the plain error standard); *United States v. Ramirez-Castillo*, 748 F.3d 205, 215-16 & n.7 (7th Cir. 2014) (same); *United States v. Turrietta*, 696 F.3d 972, 976 n.9 (10th Cir. 2012) (same); *United States v. Robinson*, 275 F.3d 371, 383 n.4 (4th Cir. 2001) (same). True, the Colorado Supreme Court has held that structural errors aren't amenable to plain error review. *Bogdanov v. People*, 941 P.2d 247, 253 (Colo.), *modified*, 955 P.2d 997 (Colo. 1997). But neither of the Supreme Court cases the court cited for that proposition in *Bogdanov* — *Sullivan v. Louisiana*, 508 U.S. 275 (1993), and *Arizona v. Fulminante*, 499 U.S. 279 (1991) — says that. They hold that *harmless* error analysis doesn't apply to structural error. The Court in *Johnson* made clear that plain error analysis can apply to alleged structural errors.

reasons I'll go into in some detail later. For now I note that fairly recently the supreme court made clear that there is no such thing as automatic reversal outside of the structural error context. *People v. Novotny*, 2014 CO 18, ¶¶ 17-21 (also noting that the structural error category has been substantially narrowed in the last few decades). And the supreme court has also clearly held that *all* trial errors (that is, nonstructural errors) are reviewable only for plain error if not preserved. *Hagos*, ¶ 14; *People v. Miller*, 113 P.3d 743, 748-50 (Colo. 2005).)

¶ 57    So which applies — structural error or plain error — when a defendant challenges the sufficiency of the evidence for the first time on appeal? At least under the current state of the law, structural error isn't the answer. I'm not aware of any Colorado or federal appellate case categorizing insufficiency of the evidence as structural error. When the Colorado and United States Supreme Courts have identified the types of errors qualifying as structural, they haven't listed insufficiency of the evidence among them. *E.g., Neder v. United States*, 527 U.S. 1, 8 (1999); *Hagos*, ¶ 10; *Krutsinger v. People*, 219 P.3d 1054, 1058-59 n.1 (Colo. 2009). And, it seems to me, for good reason. Structural errors are limited to those errors

35

that affect the framework within which the trial proceeds — that is, errors that infect the entire trial process and necessarily render a trial fundamentally unfair. *See Novotny*, ¶ 21; *People v. Flockhart*, 2013 CO 42, ¶ 17. A claim of insufficiency of the evidence doesn't challenge the "framework" of the trial or even the process by which guilt is decided.

¶ 58 Maybe the Colorado Supreme Court or the United States Supreme Court will someday decide that insufficiency of the evidence is a structural error, but neither has yet done so. And in light of the limitations of the meaning of structural error and the fact that insufficiency of the evidence claims have been a staple of criminal law jurisprudence for centuries, I see no reason to recognize such a claim as a new type of structural error.

¶ 59 This leaves us then with plain error. We're in good company. The federal appellate courts uniformly apply the plain error standard to unpreserved insufficiency of the evidence claims. *E.g.*, *United States v. King*, 735 F.3d 1098, 1106 (9th Cir. 2013); *United States v. DeChristopher*, 695 F.3d 1082, 1091 (10th Cir. 2012); *United States v. Frazier*, 595 F.3d 304, 306 (6th Cir. 2010); *United States v. Wallace*, 515 F.3d 327, 331-32 (4th Cir. 2008); *United*

*States v. Goode*, 483 F.3d 676, 680-81 (10th Cir. 2007); *United States v. Allen*, 390 F.3d 944, 947 (7th Cir. 2004); *United States v. Spinner*, 152 F.3d 950, 955 (D.C. Cir. 1998). And they often do so in a quite demanding way, requiring the defendant to show that there has been a manifest, or clear and gross, miscarriage of justice. *E.g., United States v. Chong Lam*, 677 F.3d 190, 200 & n.10 (4th Cir. 2012); *Frazier*, 595 F.3d at 306; *United States v. Luciano*, 329 F.3d 1, 5 (1st Cir. 2003); *United States v. Carr*, 5 F.3d 986, 991 (6th Cir. 1993); *United States v. Curtis*, 568 F.2d 643, 647 (9th Cir. 1978); *see also United States v. Delgado*, 672 F.3d 320, 330-31 (5th Cir. 2012) (en banc) (explaining that the Fifth Circuit's miscarriage of justice test is merely an application of the plain error test). I haven't found any federal appellate decision applying structural error in this context; all such decisions review unpreserved sufficiency claims, if at all, for plain error. *See* 2A Charles Alan Wright & Peter J. Henning, *Federal Practice & Procedure* § 469, at 388-93 (4th ed. 2009) (so summarizing federal law on the issue).

¶ 60 And lest one think that this approach is unique to the federal system, it bears mentioning that the clear majority of state appellate courts also apply plain error review to unpreserved

insufficiency claims.  *See, e.g., Swan v. State*, 820 A.2d 342, 358

n.45 (Del. 2003); *State v. Thompson*, 507 N.W.2d 253, 270 (Neb.

1993); *State v. Houghton*, 126 A.3d 312, 315-16 (N.H. 2015); *State*

*v. Knowels*, 643 N.W.2d 20, 21-23 (N.D. 2002); *State v. Serrano*,

324 P.3d 1274, 1279-80 (Or. 2014); *State v. Holgate*, 10 P.3d 346,

350-51 (Utah 2000).  *But see, e.g., Garay v. State*, 165 P.3d 99, 101

n.1 (Wyo. 2007) (declining to apply plain error review and

apparently holding that reversal is always required if the evidence is

insufficient).

¶ 61      This brings me to *People v. McCoy*, 2015 COA 76M (*cert.*

*granted in part* Oct. 3, 2016), in which a majority of the division

attempted to justify a special automatic reversal exception to plain

error review for insufficiency claims.[11]  To get there, the majority

reasoned merely that because an insufficiency claim is reviewable

on appeal even if not raised below, plain error review doesn't apply.

But in so reasoning, the majority misapprehended how a standard

of reversal is determined.  The fact an error wasn't invited or

---

[11] The *McCoy* majority didn't assert that the court's error in failing
to sua sponte enter a judgment of acquittal constituted structural
error.

waived, and therefore can be raised on appeal, doesn't dictate the standard of reversal. That standard is dictated by (1) whether the issue is constitutional; (2) if it is, the nature of the constitutional violation; and (3) whether the issue is preserved. *See Hagos*, ¶¶ 9-14.

¶ 62  Given that other divisions of this court have relied on *McCoy*, a closer examination of its rationale is warranted. Judge Webb did much of that work in his special concurrence in that case, *McCoy*, ¶¶ 68-107, but I think there's a bit more to be said.

¶ 63  The *McCoy* majority first relied on *Morse v. People*, 168 Colo. 494, 452 P.2d 3 (1969), which it characterized as reviewing an unpreserved insufficiency of the evidence claim without applying plain error. *See McCoy*, ¶¶ 11-13. That's a misreading of the case. The *Morse* court noted that the defendant had raised several claims of error that he hadn't preserved at trial or in his motion for a new trial. The court said that, "[s]uch being the posture of these various other matters," it would "*elect* not to resolve — or attempt to resolve" any of them, "save one," because the record didn't permit it to do so in an "intelligent" manner. 168 Colo. at 497, 452 P.2d at 5

(emphasis added).[12]   The one unpreserved claim of error it

"elect[ed]" to review was an insufficiency of the evidence claim.  *Id.*

In justifying its treatment of the unpreserved claims, the court said,

"[i]n support of our determination of this phase of the controversy

see R.C.P. Colo. 37(b) . . . ."[13]  *Id.*  At that time, Rule 37(b) read that

the appellate court wouldn't consider claims the defendant had

failed to present in a motion for a new trial "except that plain error

or defects affecting substantial rights may be noted although they

were not brought to the attention of the trial court."  Crim. P. 37(b)

(1963).  So in "elect[ing]" to review the insufficiency claim under the

then-applicable plain error rule, the court applied plain error

---

[12] In saying that the record was insufficient to allow it to intelligently attempt to resolve the other unpreserved issues, the court plainly signaled that had the record been sufficient on those issues, it could have reviewed them for plain error under then Crim. P. 37(b), just as it was doing for the insufficiency claim as to which there was an adequate record.  Had the failure to preserve the other issues itself been enough to preclude *all* review, the court could've simply said that.  But it didn't.  The only logical conclusion is that the *Morse* court viewed the insufficiency claim, but not the other unpreserved claims, as amenable to plain error review because of the state of the record.

[13] The court also cited three cases in which it had declined to review unpreserved claims of error.

review.[14] *Morse*, 168 Colo. at 497, 452 P.2d at 5. (The court ruled that the evidence was sufficient, so it went no farther.) To the extent, then, that *Morse* has anything to say about this issue, it actually supports the notion that plain error review applies to unpreserved insufficiency claims.

¶ 64    In any event, I think it was inadvisable for the *McCoy* majority to rely on a perceived inference (and, in my view, an incorrect one at that) from an almost fifty-year-old decision. A lot of water has gone under the bridge in the interim; our understanding and application of standards of review have changed a great deal. *See Novotny*, ¶¶ 17-22. In particular, we now have Crim. P. 52(b), and the supreme court has held that Colorado appellate courts will consider

---

[14] The supreme court's citation of and reliance on former Crim. P. 37(b) to distinguish between unpreserved errors that it would not review and a claim of error that it would consider for plain error was consistent with its approach in numerous other cases of the era. *See, e.g., Phillips v. People*, 170 Colo. 520, 532-33, 462 P.2d 594, 600 (1969), *overruled on other grounds by People v. Helm*, 633 P.2d 1071 (Colo. 1981); *Falgout v. People*, 170 Colo. 32, 45, 459 P.2d 572, 579 (1969); *Morehead v. People*, 167 Colo. 287, 291, 447 P.2d 215, 217 (1968); *Moore v. People*, 164 Colo. 222, 230-32, 434 P.2d 132, 136-37 (1967); *Marshall v. People*, 160 Colo. 323, 326-27, 417 P.2d 491, 493 (1966); *Moreno v. People*, 156 Colo. 503, 506, 400 P.2d 899, 900 (1965); *Peterson v. People*, 153 Colo. 23, 27-28, 384 P.2d 460, 462 (1963).

claims of trial error (as opposed to structural error), even if of a constitutional nature, "*only* under the plain error standard." *Miller*, 113 P.3d at 749 (emphasis added) (citing *Griego v. People*, 19 P.3d 1, 8 (Colo. 2001)); *see also Reyna-Abarca v. People*, 2017 CO 15, ¶ 37 (plain error review applies to unpreserved double jeopardy claims; Crim. P. 52(b) "does not distinguish between constitutional and nonconstitutional errors"); *People v. Davis*, 2015 CO 36M, ¶¶ 32, 37-41 (unanimously applying plain error review to a double jeopardy issue that turned, in part, on the sufficiency of the evidence); *Martinez v. People*, 2015 CO 16, ¶¶ 12-13 (constitutional errors are forfeited by lack of timely objection); *Hagos*, ¶ 14 ("[W]e review *all* other errors, constitutional and nonconstitutional, that were not preserved by objection for plain error.") (emphasis added).[15]

¶ 65    The *McCoy* majority also cited two 2012 decisions from divisions of this court for the proposition that "a defendant need not preserve a sufficiency of the evidence claim by moving for a judgment of acquittal." *McCoy*, ¶ 14.  It's true that, in the first of

_____

[15] The supreme court's pronouncements in these cases were very broad, allowing of no exceptions.

those cases, *People v. Randell*, 2012 COA 108, the division declined to apply plain error review to an unpreserved insufficiency of the evidence claim. *Id.* at ¶ 31. But it did so because "[a] defendant may challenge the sufficiency of the evidence on appeal without moving for a judgment of acquittal in the trial court." *Id.* at ¶ 30. While that is so, it's no reason for rejecting plain error. Again, the fact a claim is reviewable says nothing about what standard of reversal applies.

¶ 66    In the other case, *People v. Garcia*, 2012 COA 79, the division rejected the People's argument that the defendant hadn't preserved his sufficiency claim for the reason that a defendant may challenge the sufficiency of the evidence on appeal even though he didn't move for a judgment of acquittal in the trial court. *Id.* at ¶ 35. So that division, like the majority in *McCoy* and the division in *Randell*, also erroneously equated reviewability with preservation.

¶ 67    The *McCoy* majority distinguished other court of appeals decisions applying plain error review — *People v. Harris*, 633 P.2d 1095 (Colo. App. 1981), and *People v. Rice*, 40 Colo. App. 357, 579 P.2d 647 (1978) — on the basis they'd been decided under a former version of Crim. P. 33(a) that required a defendant to move for a

new trial to preserve issues for review. As the majority pointed out, under the current version of Crim. P. 33(a), the filing of a motion for a new trial is optional and a defendant "need not raise all the issues it intends to raise on appeal in [a motion for a new trial] to preserve them for appellate review." *McCoy*, ¶ 19 (quoting Crim. P. 33(a)).

¶ 68    But the majority misunderstood the effect of this change. Under the prior version of Crim. P. 33(a), a defendant had to file a motion for a new trial to preserve *any* issue for appeal, including issues that the defendant had otherwise timely and clearly raised. In other words, the defendant had to re-raise an issue in a new trial motion to preserve it. The new version of the rule does away with that requirement, but it doesn't do away with the requirement that a defendant must clearly raise an issue in the trial court at the appropriate time to preserve it for appellate review. So the change to Crim. P. 33(a) in no way supports the *McCoy* majority's conclusion that unpreserved sufficiency claims aren't subject to plain error review.[16]

---

[16] If the *McCoy* majority's characterization of Crim. P. 33(a) is to be taken at face value, a defendant wouldn't be required to timely and properly raise *any* issue in the trial court to preserve it for appellate

44

¶ 69   Lastly, the *McCoy* majority attempted to distinguish federal authority — which it acknowledged uniformly applies plain error review to unpreserved insufficiency claims — by asserting (in a manner that only begged the question) that federal courts require a party to move for a judgment of acquittal on particular insufficiency grounds under Fed. R. Crim. P. 29 to preserve such grounds for appellate review, while Colorado courts purportedly don't require similar action under Crim. P. 29.  *McCoy*, ¶¶ 23-24.  But the federal cases merely point out that Fed. R. Crim. P. 29 governs the process for raising an insufficiency claim during and after trial.  That's true of Crim. P. 29 as well.  So Crim. P. 29, like Fed. R. Crim. P. 29, is the vehicle through which a defendant ordinarily preserves an insufficiency claim.  In this sense, Crim. P. 29 doesn't differ from other rules governing the time and method for raising, and therefore

review.  After all, the rule doesn't speak in terms of sufficiency of the evidence specifically, but of issues generally.  Such a reading of the rule would be clearly contrary to long-standing and controlling precedent, not to mention Crim. P. 52(b).

preserving, an issue, as Judge Webb noted in his special concurrence. *McCoy*, ¶¶ 84-88.[17]

¶ 70     The *McCoy* majority gave no reason for applying Crim. P. 29 differently than Fed. R. Crim. P. 29. Given that the rules are, at least in relevant part, substantially identical, and our supreme court is strongly inclined to interpret comparable Colorado and federal rules similarly, *see, e.g.*, *Warne v. Hall*, 2016 CO 50, ¶ 12 (rules of civil procedure); *Crumb v. People*, 230 P.3d 726, 731 n.5 (Colo. 2010) (rules of criminal procedure); *People v. Melendez*, 102 P.3d 315, 319 (Colo. 2004) (rules of evidence), I see no reason to view them as meaning two different things.

---

[17] Other rules providing procedures and deadlines for requesting relief include Crim. P. 5(a)(4) and 7(h) (requesting a preliminary hearing), Crim. P. 7(g) (moving for a bill of particulars), Crim. P. 8(a)(1) (mandatory joinder of offenses), Crim. P. 11(e)(1) (pleading insanity defense), Crim. P. 12(b)(2) and (3) (raising certain defenses and objections), Crim. P. 14 (severance of charges or defendants), Crim. P. 15(a) (requesting depositions), Crim. P. 21 and 22 (change of venue or judge), Crim. P. 23 (requesting trial by jury), Crim P. 24(b) (challenges to the jurors for cause) Crim. P. 24(c) (challenges to the jury pool), Crim. P. 30 (tendering and objecting to jury instructions), and Crim. P. 31 (polling the jury). A failure to follow these rules has consequences for reviewability and the standard of review on appeal. Why a failure to follow Crim. P. 29 should have no consequences, the *McCoy* majority didn't really say.

¶ 71     In attempting to distinguish the federal cases, the *McCoy* majority also overlooked the fact that those cases ultimately rely on the policies underlying the principle that a party must timely and clearly raise a claim of error in the trial court to preserve it for appellate review.  *See, e.g.*, *Delgado*, 672 F.3d at 331-32 (discussing the policies supporting plain error review of unpreserved claims in a sufficiency case).  Colorado authority recognizes the purposes served by the plain error rule no less so than the federal cases. *E.g.*, *Hagos*, ¶¶ 18, 23; *People v. Lacallo*, 2014 COA 78, ¶¶ 15-16.

¶ 72     It's no answer to all this to say, as the *McCoy* majority did, that proof beyond a reasonable doubt is required by "the Due Process Clause of the Fourteenth Amendment."  *McCoy*, ¶ 7; *see also id.* at ¶ 35; *Lacallo*, ¶ 63 (Román, J., concurring in part and dissenting in part).[18]  After all, under binding Colorado precedent,

---

[18] Those adhering to the automatic reversal approach may be motivated by assuring that an actually innocent person won't stand convicted.  But the assumption underlying that motivation — that if proof of guilt is insufficient, the defendant is necessarily actually innocent — is incorrect.  A finding of not guilty — that is, a finding that the prosecution didn't meet its burden of proof — isn't a finding of actual innocence.  *People v. Allee*, 740 P.2d 1, 6-7 (Colo. 1987); *Roberts v. People*, 103 Colo. 250, 261, 87 P.2d 251, 256 (1938).  Rather, conviction on a failure of sufficient proof is a due

47

all unpreserved constitutional errors (that aren't structural errors) are reviewable only for plain error.  Indeed, both the Colorado Supreme Court and divisions of this court routinely review unpreserved due process claims for plain error, including claims that, because of some instructional defect or misstatement of the law, the prosecution didn't meet its burden of proof.  *E.g.*, *Miller*, 113 P.3d at 747-50; *People v. Dunaway*, 88 P.3d 619, 624-30 (Colo. 2004); *Walker v. People*, 932 P.2d 303, 310-11 (Colo. 1997); *People v. Clark*, 2015 COA 44, ¶¶ 162-177; *People v. Devorss*, 277 P.3d 829, 834-35 (Colo. App. 2011); *People v. Dunlap*, 124 P.3d 780, 805-06 (Colo. App. 2004); *see also Griego*, 19 P.3d at 8 ("[W]hen a trial court misinstructs the jury on an element of an offense, either by omitting or misdescribing that element, that error is subject to constitutional harmless or plain error analysis.").  And other courts have held specifically that applying plain error review to unpreserved insufficiency claims doesn't violate the Due Process Clause.  *E.g., Delgado*, 672 F.3d at 331; *cf. Carlisle v. United States*,

_____

process violation — a procedural failure.  In the event an actually innocent defendant stands convicted, the remedy is habeas corpus (or perhaps a Crim. P. 35(c) motion based on ineffective assistance of counsel or some other theory).

517 U.S. 416, 429 (1996) (it's not a denial of due process to require a defendant to timely move for a judgment of acquittal under Fed. R. Crim. P. 29; a trial court can't enter such a judgment outside the time permitted by the rule even if the defendant claims the evidence was insufficient).

¶ 73      Given all this, I find *McCoy*'s reasoning unpersuasive. Rather, I conclude that applying plain error review in this context is consistent with the plain language of Crim. P. 52(b), the purposes served by the plain error rule, and precedent.

### B. This Case: Any Error Wasn't Plain

¶ 74      When an unpreserved insufficiency claim is of the usual variety, review for plain error will, in the vast majority of cases, result in reversal if the evidence is insufficient: the insufficiency will be sufficiently obvious and the entry of judgment based on insufficient evidence will of course affect a defendant's substantial rights. *But see Delgado*, 672 F.3d at 331-32 n.11 (explaining that the obviousness prong of plain error review may dictate affirmance even if the appellate court concludes that the evidence is insufficient where insufficiency is a "close call[]"). But defendant doesn't present the usual insufficiency claim. Instead, he presents

a claim based on an interpretation of a statutory subsection that no Colorado appellate decision has yet addressed.

¶ 75    I'm willing to accept for now the majority's ultimate conclusion that a prior Colorado felony conviction for cultivation of marijuana now counts as a prior felony conviction for habitual criminal purposes only if it involved more than six plants.  That conclusion depends on the correctness of defendant's argument that section 18-1.3-801(3) applies not only to out-of-state drug convictions but also to Colorado drug convictions.  While, as the majority concludes, defendant may be correct on that score, contrary to the majority, I'm not convinced that he is obviously so, for several reasons.

¶ 76    First, subsection (3) has been on the books for more than forty years, and despite Colorado's drug laws having changed many times over that period, this is the first case of which we are aware in which a party has raised it.[19]  And this is so notwithstanding what must have been many thousands of drug convictions in that time.

---

[19] The statute to which defendant pleaded guilty to violating in 1997 was changed in relevant part in 2010.  Ch. 259, sec. 6, § 18-18-406, 2010 Colo. Sess. Laws 1169.

That defendant's argument seems never to have occurred to any other defendant screams "not obvious."

¶ 77    Second, though the majority purports to rely on the plain language of subsection (3), that subsection is preceded by several subsections that use the same "if committed within this state" language only in conjunction with convictions under the laws of other states or the United States.  § 18-1.3-801(1)(b)(II), (1.5), (2)(a)(I).  Those subsections predate the General Assembly's 1976 addition of subsection (3), and the General Assembly may well have assumed in enacting subsection (3) that in using such language it was using it in the same limited way that it's used in those other subsections.

¶ 78    Third, the General Assembly may well have intended such an extrajurisdictional limitation to give full credit to the judgments of prior Colorado legislatures as to what should be regarded as a felony.

¶ 79    Fourth, defendant's claim required the district court to know that the cultivation statute had been changed, and how, and that this change brought into play a subsection of the habitual criminal

51

statute that no one had mentioned. I don't think we should expect judges to be omniscient.

¶ 80 Under these circumstances, I don't think it can fairly be said that the error was "so clear-cut, so obvious, that [the] trial judge should [have] be[en] able to avoid it without benefit of objection." *Lacallo*, ¶ 22 (quoting *People v. Pollard*, 2013 COA 31, ¶ 39); *see also DeChristopher*, 695 F.3d at 1091-92 (discussing obviousness of an issue of statutory interpretation); *Lacallo*, ¶¶ 26-32 (same); *People v. Heywood*, 2014 COA 99, ¶ 36 (same). Because defendant's claim of error fails the obviousness requirement of the plain error test, I would affirm the district court's habitual criminal adjudication on this count (subject to the determination of excusable neglect on remand).[20]

---

[20] Were I to agree with the majority's decision to reverse on this count, I would also agree with its decision to remand for a new sentencing hearing in which the prosecution would have the opportunity to present evidence that defendant's prior cultivation conviction involved more than six plants. *See Monge v. California*, 524 U.S. 721, 734 (1998) (double jeopardy doesn't preclude retrial on a prior conviction allegation in noncapital sentencing cases); *People v. Porter*, 2015 CO 34, ¶ 29 (same).